[Cite as *Women's Med Ctr. of Dayton v. Dept. of Health*, 2019-Ohio-1146.]

**IN THE COURT OF APPEALS OF OHIO**
**SECOND APPELLATE DISTRICT**
**MONTGOMERY COUNTY**

| | | |
|---|---|---|
| WOMEN'S MED CENTER OF DAYTON | : | |
| | : | |
| | : | Appellate Case No. 28132 |
| Plaintiff-Appellant | : | |
| | : | Trial Court Case No. 2016-CV-6088 |
| v. | : | |
| | : | (Civil Appeal from |
| STATE OF OHIO DEPARTMENT OF HEALTH | : | Common Pleas Court) |
| | : | |
| | : | |
| Defendant-Appellee | | |

. . . . . . . . . . .

O P I N I O N

Rendered on the 29th day of March, 2019.

. . . . . . . . . .

JENNIFER L. BRANCH, Atty. Reg. No. 0038893 and ALPHONSE A. GERHARDSTEIN, Atty. Reg. No. 0032053, 441 Vine Street, Suite 3400, Cincinnati, Ohio 45202 and DAVID C. GREER, Atty. Reg. No. 0009090, 6 North Main Street, Suite 400, Dayton, Ohio 45402
 Attorneys for Plaintiff-Appellant

STEPHEN P. CARNEY, Atty. Reg. No. 0063460, 30 East Broad Street, 17th Floor, Columbus, Ohio 43215 and JAMES T. WAKLEY, Atty. Reg. No. 0090349, 30 East Broad Street, 26th Floor, Columbus, Ohio 43215
 Attorney for Defendant-Appellee

. . . . . . . . . . . .

DONOVAN, J.

{¶ 1} This matter is before the Court on the September 19, 2018 Notice of Appeal of Women's Med Center of Dayton ("WMCD"). WMCD, a facility at which abortions are performed, appeals from the trial court's August 22, 2018 judgment affirming the adjudication order of the Ohio Department of Health ("ODH") that both refused to renew and revoked WMCD's ambulatory surgical facility ("ASF") license, because WMCD did not have a written transfer agreement ("WTA") with a local hospital or a variance from that requirement, as required by law. We hereby affirm the judgment of the trial court.

{¶ 2} By way of background, we note that the administrative record before us contains the following stipulations of facts:

1. Women's Medical Group Professional Corporation ("WMGPC") operates [WMCD] which is located at 1401 East Stroop Road, Kettering, Ohio * * * .

2. Dr. Haskell is a physician who has been licensed to practice medicine in the State of Ohio since 1974. He is the sole shareholder of [WMGPC]. Dr. Haskell is the Medical Director of WMCD.

3. [ODH] is a state agency established under Ohio Revised Code § 3701.01. * * * Richard Hodges is the Director of [ODH] * * *.

4. In October of 2002, [WMCD] submitted an application for licensure as an [ASF] to [ODH]. * * *

5. ASFs are "Health Care Facilities" as that term is defined in Ohio Revised Code § 3702.30(A)(4). The [ODH] regulates and licenses [ASFs] and Health Care Facilities. If the Director of [ODH] determines that a health

care facility is operating without a license or violated any laws or regulations governing the operation of health care facilities, he may take any of the actions set forth in Ohio Revised Code § 3702.32.

6. WMCD had a WTA for a short time in 2002 but since then has never been able to obtain a WTA from a local hospital. In 2002 WMCD applied for a variance * * * of the WTA regulation. In 2008 a previous Director of [ODH] granted WMCD's variance request in 2008. * * * ODH also renewed WMCD's ASF license in 2008 and every year since through 2011. * * *

7. WMCD annually applied for a renewal of its ASF license every year. WMCD's most recent application was made in July 2015. * * *

8. On June 25, 2015 Director Hodges denied WMCD's variance requests for 2012, 2013, 2014, and 2015 for the reasons contained in Director Hodges['s] letter.[1]

9. On July 24, 2015 WMCD submitted a renewed 2014 variance request and its 2015 variance request and added a third backup physician. * * *

10. On September 25, 2015 Director Hodges denied WMCD's variance requests for 2012, 2013, 2014, and 2015 for the reasons contained in Director Hodges['] letter.[2]

---

[1] Hodges' June 25, 2015 correspondence to counsel for WMCD stated: "Pursuant to R.C. 3702.304 and O.A.C. 3701-83-14 * * * I am denying the variance requests for [WMCD] for the 2012, 2013, and 2014 license period."

[2] Hodges' September 25, 2015 correspondence to counsel for WMCD provided: "Pursuant to R.C. 3702.304, O.A.C. 3701-83-14, and O.A.C. 3701-83-19 * * * I am denying the variance requests of [WMCD] for the 2012, 2013, 2014 and 2015 license

11. Also on September 25, 2015, Director Hodges provided notice that he proposed to revoke and not renew WMCD's ASF license because WMCD did not have a WTA with a local hospital as required by O.R.C. § 3702.303 and O.A.C. § 3701-83-19(E). Director Hodges' reasons for proposing to revoke and not renew WMCD's ASF license are contained in Director Hodges' notice.[3] * * * The notice also stated that the facility may request a hearing concerning this proposal. WMCD timely filed a hearing request. * * * Thereafter, ODH set the hearing in this case. * * *

12. WMCD has not submitted another variance request for 2015.

Joint Exhibit A.

{¶ 3} An administrative hearing was held on April 26, 2016. On August 29, 2016, the hearing examiner issued a report and recommendation that stated in part as follows:

8. Pursuant to R.C. § 3702.304(C) and OAC §3701-83-14(F), the refusal of the Director to grant a variance or waiver, in whole or in part, shall be final and shall not be construed as creating any rights to a hearing under Chapter 119 of the Revised Code.

---

periods." The correspondence further provides: "Pursuant to R.C. 3702.304 and O.A.C. 3701-83-14, the denial of WMC[D]'s application for a variance shall not be construed as creating any rights to a hearing under Chapter 119 of the Revised Code."

[3] Hodges' notice provided: "I propose to issue an Order revoking and refusing to renew [WMCD's] [ASF license] in accordance with Revised Code (R.C.) Chapter 119 and R.C. 3702.32(D)(2) due to violations of R.C. 3702.303 and Ohio Admin. Code (O.A.C.) 3701-83-19(E). R.C. 3702.303(A) requires an [ASF] to have a [WTA] with a local hospital for the safe and immediate transfer of patients when medical care is needed beyond that which can be provided in the facility. O.A.C. 3701-83-19(E) requires an [ASF] have a WTA with a hospital for the transfer of patients in the event of medical complications, emergency situations, and for other needs as they arise."

9. Because WMCD does not have a written transfer agreement or a variance, WMCD does not meet the licensing requirements of OAC Chapter 3701.83.

10. Because WMCD does not meet the licensing requirements of OAC Chapter 3701.83, the Director's decision to not renew, or to revoke, the license of WMCD, is valid.

{¶ 4} WMCD filed objections to the report and recommendation. On November 30, 2016, ODH Director Hodges issued the adjudication order at issue herein. It stated in part as follows:

The Hearing Examiner found that each [ASF] must be licensed and meet certain quality standards established by ODH. R.C. 3702.30(D). The Hearing Examiner concluded that because WMC[D] does not have a [WTA] or a variance, WMC[D] does not meet the licensing requirements of O.A.C. Chapter 3710-83.

WMC[D]'s Objections state that evidence in the record supports granting a variance and therefore, renewing WMC[D]'s [ASF] license. WMC[D] argues that its variance application satisfies the requirements of R.C. 3702.304 by having three backup doctors that are credentialed with admitting privileges to Miami Valley Hospital, and by including the emergency protocol for transferring patients. WMC[D]'s Objections stated that it has shown that its emergency protocol and system of backup doctors "achieves the purpose of the written transfer agreement." The Objections also stated that the statute requiring a [WTA] is unconstitutional because

the bill enacting the statute, House Bill 59, violated the single-subject provision of the Ohio Constitution.

WMC[D]'s statements regarding the rejection of its variance application are not the subject of this Adjudication Order. R.C. 3702.304(C) provides that the Director's decision to grant, refuse, or rescind a variance is final. O.A.C. 3701-83-14 provides that the Director's denial of a variance is final and does not create the right to hearing under Chapter 119. Therefore, the Hearing Examiner properly determined that WMC[D]'s constitutional challenges to the statute were not within the administrative hearing['s] purview. In the same respect, WMC[D]'s challenges to House Bill 59 [are] beyond the power of the Hearing Officer to decide. The Hearing Officer liberally permitted WMC[D] to proffer its record and include arguments regarding the single-subject rule. However, determining the constitutionality of state statutes is beyond the scope of an administrative licensing hearing.

* * * WMC[D]'s Objections argue that the Hearing Examiner relied upon the rule and not the statute. To the extent that the Hearing Examiner's conclusions might not rely on both the statute and the rule, as bases for revocation, I hereby modify the Report and Recommendation to rely on both a violation to R.C. 3702.303(A) and a violation of O.A.C. 3701-83-19 as independent bases to refuse to renew, and to revoke, WMC[D]'s license.

In conclusion, the Hearing Examiner recommended that the

Director's decision not to renew or to revoke, the license of WMC[D] is valid as a matter of law. Based upon such report, recommendation, transcript of testimony and evidence, and objections of the parties, and additional testimony and evidence, and in accordance with R.C. 3702.32, R.C. 3702.303(A), R.C. Chapter 119, and O.A.C. 3701-83-19(E), I hereby issue this Adjudication Order refusing to renew and revoking WMC[D]'s health care facility license.

{¶ 5} WMCD filed a notice of appeal in the trial court, asserting in part:

1.     The [ODH's] adjudication order is arbitrary, contrary to law, and is not supported by reliable, probative, and substantial evidence.

2.     [WMCD's] license should not be revoked and should be renewed because [WMCD] has satisfied the requirements of R.C. § 3702.304 and is entitled to a variance from the [WTA].

3.     Revised Code § 3702.303 is void and unenforceable because it violates the logrolling provision of the Ohio [C]onstitution.

4.     Ohio Administrative Code § 3701-83-19(E) and O.A.C. § 3701-83-14 are unenforceable because they were superseded by R.C. § 3702.303 and R.C. § 3702.304.

WMCD's notice of appeal also pointed out that it had filed a separate action in federal court, *Planned Parenthood Southwest Ohio Region, et al. v. Richard Hodges, et al.,* S.D.Ohio No. 1:15-cv-568, claiming that Ohio's written transfer agreement requirement, and various laws related to this requirement, violated WMCD's due process and equal protection rights under the United States Constitution, and that it had "not waived those

claims by not raising them in this action."

{¶ 6} On December 2, 2016, WMCD filed an emergency motion to stay the ODH's order. WMCD asserted that, if the stay were denied, that "decision would effectively close the last abortion facility in the Dayton area before [WMCD's] appeal [was] decided." On December 8, 2016, ODH filed a memorandum in opposition to the stay, to which WMCD filed a reply. On December 12, 2016, the trial court granted WMCD's emergency motion for a stay of the ODH's order.

{¶ 7} WMCD filed a brief in the trial court, detailing the arguments set forth in its notice of appeal. WMCD argued that ODH's decision not to renew and to revoke its license pursuant to R.C. 3702.303 was contrary to law because the way the WTA requirement was enacted violated the single subject provision of the Ohio Constitution.[4] WMCD observed that the "WTA requirement (R.C. § 3702.303) and the variance requirement (R.C. § 3702.304) were enacted by the Ohio legislature as part of HB 59, the omnibus budget bill," and that, at "the end of the state budget process Ohio legislators buried controversial anti-abortion provisions in the several thousand pages of a budget bill that was sure to pass."

{¶ 8} WMCD further asserted that the "Director premised his adjudication order in part upon O.A.C. § 3701-83-14 and O.A.C. § 3701-83-19. These administrative rules were codified in 2015 when the Ohio legislature passed R.C. § 3702.303 and R.C. 3702.304. Because the earlier regulations conflict with R.C. § 3702.303 and R.C. § 3702.304, they are unenforceable."

---

[4] "No bill shall contain more than one subject, which shall be clearly expressed in its title. * * *." Ohio Constitution, Article II, Section (D).

{¶ 9} With respect to the trial court's jurisdiction, WMCD argued that, under R.C. 119.06, "an adjudication order triggers the Chapter 119 right to a hearing," and "WMCD was entitled to a hearing prior to the Director making a final decision regarding the variance." WMCD argued that ODH refused to give it a hearing prior to the denial of the variance on September 25, 2015; "[t]he denial letter explicitly stated that it was a final decision and that WMCD would have no right to a hearing." Finally, WMCD argued that the denial of its request for a variance was not supported by reliable, probative and substantial evidence.

{¶ 10} ODH filed its brief in response on March 1, 2017. ODH asserted that the "ultimate issue here is simple: When the [ODH] found that [WMCD] lacked a written transfer agreement * * *, was that conclusion supported by reliable, probative, and substantial evidence and in accordance with law? The answer is yes, because WMCD admits that it does not have one." ODH asserted that, while WMCD argued that it was entitled to a variance, "the variance is not at issue here, as that decision is purely discretionary and not subject to judicial review."

{¶ 11} On March 15, 2017, WMCD filed a reply brief, in which it asserted that ODH incorrectly attempted "to distinguish the variance process from the license revocation," because WMCD's "inability to challenge the denial of the variance renders the right to appeal the license revocation effectively meaningless."

{¶ 12} On July 20, 2017, the parties filed a joint motion to stay the proceedings in this case until the Supreme Court of Ohio issued its decision in *Capital Care Network of Toledo v. State of Ohio Dept. of Health,* Case No. 2016-1348. The motion asserted that both the pending case and *Capital Care* addressed 1) whether the bill enacting the

relevant state statute was adopted in violation of the Ohio Constitution's single-subject rule, thus rendering the statutory requirement unconstitutional, and 2) whether an earlier Ohio administrative rule regarding transfer agreements could validly be used to justify license revocation. The parties argued that, since *Capital Care* may resolve this case, "judicial resources and party expenses are best preserved by staying this case pending the outcome of *Capital Care*." The court granted the motion to stay on August 18, 2017.

{¶ 13} On January 24, 2018, the Ohio Supreme Court decided *Capital Care*, 153 Ohio St.3d 362, 2018-Ohio-440, 106 N.E.2d 1209. The Ohio Supreme Court held:

> The order of the Ohio Department of Health revoking the health care facility license of Capital Care Network of Toledo is supported by reliable, probative, and substantial evidence and is in accordance with law because Capital Care operated without a written transfer agreement for a period of five months and its subsequent agreement with the University of Michigan does not satisfy the Ohio Administrative Code requirement to establish and maintain written transfer agreements for patients in emergency situations.

*Id*. at syllabus.

{¶ 14} The Court further held:

> * * * [C]ontrary to the approach of the court of appeals in reaching the constitutionality of R.C. 3702.303, 3702.304, and 3727.60, our precedent directs that "this court will not reach constitutional issues unless absolutely necessary." *State v. Talty*, 103 Ohio St.3d 177, 2004-Ohio-4888, 814 N.E.2d 1201, ¶ 9; *In re Miller*, 63 Ohio St.3d 99, 110, 585 N.E.2d 396 (1992). And our long-standing practice disfavors issuing advisory

opinions. *Dohme v. Eurand Am., Inc.*, 130 Ohio St.3d 168, 2011-Ohio-4609, 956 N.E.2d 825, ¶ 27; *Egan v. Natl. Distillers & Chem. Corp.*, 25 Ohio St.3d 176, 495 N.E.2d 904 (1986), syllabus. As Chief Justice Roberts has stated, "[I]f it is not necessary to decide more, it is necessary not to decide more." *PDK Laboratories, Inc. v. United States Drug Enforcement Admin.* 362 F.3d 786, 799 (D.C.Cir.2004) (Roberts, J., concurring in part and concurring in judgment). We thus decline to address the constitutional issues in this case, because revocation of Capital Care's license is supported by reliable, probative, and substantial evidence and is accordance with law.

*Id.* at ¶ 31.

**{¶ 15}** On March 12, 2018, the trial court lifted the stay.

**{¶ 16}** Following a status conference on July 18, 2018, the court scheduled oral arguments for August 17, 2018. On that date, the court indicated to the parties that it was "very mindful of the prohibition on a trial court resorting in the first instance to a finding of unconstitutionality of a statute * * *" and its intention to adhere to that prohibition. With this prohibition in mind, the court questioned "whether [it] ha[d] jurisdiction over any issue pertaining to the variance at play." Noting that WMCD's notice of appeal "made specific reference to the adjudication by the Director for the revocation and non-renewal of the licensure" and "did not make specific reference to the variance," the court observed that "with regard to the variance issues, in both the regulatory scheme and the statutory scheme, there is language indicating that the variance is not a judicially reviewable determination."

{¶ 17} The court then asked counsel for WMCD to respond to the jurisdictional issue. Counsel responded that WMCD's arguments "include the argument that the decision to deny the variance, that September 25th letter, [was] in itself an adjudication order," and that the court's jurisdiction "stems not only from the phrase or the definition of what an adjudication is but from what actually happened here." Counsel argued that, in the order from which WMCD appealed, the Director said "that he relied on the hearing officer's finding that [WMCD] (1) did not have a written transfer agreement; and (2) did not have a variance. That is the basis for the decision to revoke the license." Counsel further argued:

And so the argument would be once the adjudication order, which I'm calling the September 25th letter denying the variance was issued, at that moment it changed the rights of [WMCD], it was about the variance, they can't get a license, and the Director of [ODH], when he did that, was premature, frankly. He didn't first make it a proposal; he didn't first tell us we could have a hearing; he didn't give us an opportunity to exercise our 119 rights. Just because the 119 rights weren't given before that letter came out, that is sufficient to declare that invalid. And for that reason, the entire adjudication order to revoke should be reversed.

{¶ 18} The trial court then asked counsel for ODH to address whether the court had jurisdiction over the variance issue. Counsel argued that the variance determination and the adjudication order revoking and refusing to renew the licensure were "two separate orders." ODH argued that WMCD was attempting to take what was a very specific proceeding dealing only with whether it had a written transfer agreement and

"shoehorn this variance determination" in an attempt to get review, which was "entirely improper * * * because * * * it's a separate order, separate set of proceedings, separate application." Counsel argued that the trial court lacked jurisdiction over the variance "because the General Assembly hasn't granted it but beyond that because it was never an appropriate consideration for the hearing examiner and it wasn't in the order that has been appealed to this Court thereby invoking this Court's jurisdiction."

{¶ 19} Counsel for ODH further argued that the "General Assembly decides what is a reviewable adjudication order under [R.C. Chapter] 119," and "in fact, the classes, although they are very broad in 119, do not encompass the type of purely discretionary review that we have in the variance determination." Counsel argued that the variance determination was "something of its own species that should be governed by its own statute."

{¶ 20} In response, WMCD argued that there is "nothing in [R.C. 3702.304] that says Chapter 119 rights are prohibited and * * * Chapter 119.06 provides Chapter 119 rights in a situation like this where the top person in the agency, the Director, is using his decision to deny the variance to revoke the license." Counsel for WMCD argued:

> I would argue that [the] decision by the Director in September to deny the variance for the first time since 2008 * * * became the decision that prohibited [WMCD] from ever getting a license. It was as if the Department can now decide that this abortion clinic can no longer operate. We figured out the trick. We figured out that if we actually deny your application for a variance for an arbitrary reason, there's * * * nothing in the record about why four doctors put a health and safety risk to the patient. The Department

offered no evidence in that regard. This was a purely arbitrary reason that was issued in order to close the clinic because it's an abortion clinic. That cannot be a decision that is unreviewable in the state of Ohio.

That means that this clinic has absolutely no remedy in this state, that the Director has this ultimate power that is not reviewable by any court to deny a variance for an arbitrary reason with absolutely no evidence that it is found valid and use that denial as a grounds for revoking a license.

So if that were going to be the decision of this Court, that the word final in the statute means final and unappealable, then that could raise a different issue which is a license holder in the state of Ohio should be granted the ability to have a review before its license is taken away. And if that's the decision of this Court, there would be no opportunity for a license holder to have that review in the state of Ohio.

{¶ 21} Co-Counsel for WMCD further asserted:

It would seem to me that the argument of discretion, as being something that the upper courts shouldn't have to bother with, would be fine if we're talking about whether you have pink or blue sheets on a bed in a nursing home but this is not a discretionary decision in that sense of the word.

These are decisions that came down at the same time on the same day and * * * it took both of them to put this entity out of business which is what was done here. And that, certainly, is a decision that, it seems to me, under the law and the rules of construction of legislative intent, make this

an appealable decision as part of the denial of the right to continue in existence.

{¶ 22} On August 22, 2018, the trial court issued an order affirming the ODH's adjudication order. Characterizing this matter as an "abortion regulation case," the court observed that WMCD had elected "to pursue in federal court its federal constitutional claims arising in connection with the denial of its requested variance and the revocation and non-renewal of its license" and that, accordingly, "the issues presented in this administrative appeal are narrow, focusing predominantly on matters of settled administrative law." Regarding WMCD's argument that the enactment of the WTA requirements violated the single subject rule, the court determined that "precedent dictates that 'this court will not reach constitutional issues unless absolutely necessary,' " quoting *Capital Care Network*, 153 Ohio St.3d 362, 2018-Ohio-440, 106 N.E.2d 1209, at ¶ 31. The court noted that it was "uncontroverted" that WMCD had "no WTA, nor any variance nor waiver of the WTA requirement. Hence, the director and ODH revoked and did not renew WMCD's licensure, following a hearing on that action, in a manner that was supported by reliable, probative, and substantial evidence and in accordance with law. R.C. 119.12." The court further noted that ODH's adjudication order "relied upon, as independent bases, R.C. 3702.303(A) and O.A.C. 3701-83-19."

{¶ 23} The court began its analysis with WMCD's arguments concerning the denial by the director of WMCD's application for a variance. The court noted that WMCD argued that the denial of the variance "equated to an adjudication order, requiring a hearing under R.C. 119.06, and giving rise to appellate review," while ODH responded that, pursuant to Ohio Adm.Code 3701-83-14(F), the refusal to grant a variance is final

and does not create any right to a hearing. According to the court, "WMCD proposes that the statute, but not the regulation, envisions a hearing and an appeal, because the statute omits that language of the regulation stating 'and shall not be construed as creating any rights to a hearing under Chapter 119 of the Revised Code' "; "[f]rom this omission, WMCD infers a legislative intent to allow such appeals."

{¶ 24} The court found that "[t]he determination of whether the September 25 variance letter constitutes an adjudication order is significant." According to the court, if the correspondence were deemed to be an adjudication order, it would be of no force and effect and invalid pursuant to R.C. 119.06, because WMCD was afforded no opportunity for a hearing prior to issuance of the notice. The court further noted however, that if the denial of the variance were not an adjudication, "it would be immaterial that the [ODH] did not provide WMCD with the opportunity for a hearing before denying its variance request." Trial Court Judgment at p. 14, citing *Davison v. Andrews*, 10th Dist. Franklin No. 76AP-363, 1976 WL 190033 (July 22, 1976) and *State ex rel. Bd. of Edn. of Bratenahl Local School Dist. v. State Bd. of Edn.*, 53 Ohio St.2d 173, 177, 373 N.E.2d 1238 (1978).

{¶ 25} The court noted that R.C. 119.01(D) defines an adjudication as "the determination by the highest or ultimate authority of an agency of the rights, duties, privileges, benefits, or legal relationships of a specified person, but does not include the issuance of a license in response to an application with respect to which no question is raised, nor other acts of a ministerial nature." Quoting *State ex rel. Bd. of Edn. of Bratenahl*, the court noted that, in construing the language of R.C. 119.01(D), the Ohio Supreme Court has held that "a 'refusal to act does not determine any rights, duties, privileges, benefits, or legal relationships * * * of a complaining party.' " In light of these

authorities, the trial court was "unconvinced that the letter denying WMCD its requested variance constitute[d] an adjudication order within the meaning of [R.C. 119.01(D)]," because "the refusal to grant WMCD a variance of the WTA requirement did not determine any rights, privileges, benefits, or legal relationships of WMCD." In other words, the court concluded that it lacked jurisdiction under R.C. 119.12 to review the decision, because "the denial of the variance cannot be deemed an 'adjudication' within the meaning of R.C. 119.01(D)."

**{¶ 26}** The court further concurred "in ODH's assessment that the codification, although using different verbiage than the regulation, was not intended to abolish nor diminish the administrative rules." The court found that, instead, the "legislature intended to reinforce the regulation and vice-versa." The court also concluded that, "upon the plain language used by the statute and regulation, final means final. * * * Nothing in the language used nor the legislative enactment context alters this plain meaning." The Court indicated it was "further persuaded by ODH's assertion that where the General Assembly has granted hearing rights, it has done so explicitly; consequently, the Court should therefore refrain from inserting such language into R.C. 3702.304." The court concluded that Hodges' "discretion as to granting or denying a variance is final, without the opportunity for a hearing and not subject to direct appellate review, whether the Court relies upon either the statute, the rule or both. Consequently, the Court simply lacks jurisdiction to address WMCD's claims and arguments regarding the variance determination."

**{¶ 27}** The court then noted that, even "if the denial of a variance created an appealable issue, the case before the Court [was] limited to the director's refusal to renew

and his revocation of WMCD's license." The court noted that WMCD acknowledged that it had appealed from the November 30, 2016 adjudication order and the court found that WMCD was attempting "to bootstrap the variance issue onto this appeal because it possessed neither a WTA nor a variance of the WTA requirement." The court was not convinced that this "bootstrapping" was proper and concluded that it lacked jurisdiction "over the variance related issues." According to the trial court, this conclusion significantly narrowed its ability to consider WMCD's remaining arguments.

{¶ 28} With "the issue of the variance resolved," the court's analysis turned to the significance of the director's use "of both statutory grounds and administrative rule grounds to revoke and deny WMCD's license." The court found that Ohio Adm.Code 3701-83-19 and R.C. 3702.303 provided separate and independent bases for the refusal to renew and to revoke WMCD's ASF license, and the court agreed "with ODH that no conflict exists between the statute and the administrative regulations." Thus, if the statute were deemed invalid, "that would only leave the administrative regulations as operative," but according to the court, "[e]ither suffices if valid."

{¶ 29} The court noted that WMCD focused on whether it would have been successful in its quest for a variance "in the event that the statutory scheme had not existed, relegating the variance analysis to only the administrative framework." The court noted that it "is solely within the director's discretion, however, as to whether a variance should be granted," and the refusal to do so does not create a right to hearing.

{¶ 30} Regarding WMCD's assertion that the WTA requirement in R.C. 3702.303 violated the single subject rule, the court concluded that it was unnecessary to address this constitutional issue, "because ODH had the authority to revoke and refuse to renew

WMCD's ASF license based upon its failure to comply with O.A.C. 3701-83-19(E)."  Trial Court Judgment at p. 19, citing *Capital Care,* 153 Ohio St.3d 362, 2018-Ohio-440, 106 N.E.3d 1209, at ¶ 31, 34.  In other words, the court concluded that the alternative grounds for ODH's decision insulated that decision from a constitutional attack on statutory grounds.  According to the court, the record demonstrated that WMCD violated Ohio Adm.Code 3701-83-19 by failing to secure a required WTA, and ODH properly determined that WMCD had not met the licensing requirements of Ohio Adm.Code Chapter 3701-83.  The court further found that the ODH's adjudication order was supported by substantial, reliable, and probative evidence and was in accordance with the law.  However, the court left its December 12, 2016 stay in effect "until the final adjudication of WMCD's appeal."

{¶ 31} WMCD asserts a single assignment of error, arguing that the trial court erred when it found that the November 30, 2016 adjudication order "was in accordance with the law."  According to WMCD, the order to revoke and not renew WMCD's ASF license was contrary to law because "the Director denied [WMCD's] request for a variance of a licensing requirement without providing [it] with an opportunity for judicial review."  WMCD argues that, when "an agency issues an adjudication order, it is required to hold a hearing pursuant to R.C. 119.06 prior to issuing the order unless one of the enumerated exemptions to the statute is applicable."  WMCD argues that the "decision to grant or deny a variance is a determination by the head of the Department of Health regarding an ASF's duty to comply with the written transfer agreement, and thus falls within the definition of an adjudication order."  WMCD asserts that the "adjudication of the variance does not fit into any of the narrow categories of decisions which are effective without a

hearing under R.C. § 119.06(A)-(C)." WMCD argues that ODH Director Hodges "specifically denied WMCD a hearing on the variance denial and did not address the decision to deny the variance in his adjudication order."

{¶ 32} WMCD further argues that Ohio Adm.Code 3701-83-14(F) "was replaced with the statute, R.C. § 3702.304. The regulation is therefore unenforceable. In contrast to the administrative regulation, R.C. § 3702.304 does not include the language denying the ASF a right to a hearing or an appeal." According to WMCD, by not including the language from the regulation, the legislature indicated that it intended to grant ASFs Chapter 119 rights with respect to variance denials.

{¶ 33} WMCD notes that the trial court interpreted "the decision not to grant a variance as a refusal to act." By doing so, according to WMCD, "the court reasoned that it could not constitute an adjudication. But this is an inaccurate view. ODH did not refuse to act on the variance. Rather, ODH *did* act on the variance, considering whether or not to grant it and deciding affirmatively to deny it." In contrast, WMCD argues, "for the years of 2012 through 2014, ODH did not act on the variance requests submitted by WMCD. * * * This inaction in fact does not 'determine any rights' and does not create a means of appealing the inaction of the ODH. However, by finally acting on the variances in the September 25, 2015 letter, denying them all, ODH *did* act, deciding affirmatively that all of the applications for variances be denied." WMCD argues that because Director Hodges "made an affirmative decision, not a refusal to act, his denial of the variance constituted an adjudication order."

{¶ 34} WMCD argues that the trial court erred in finding that "the only issue in front of the court is the revocation of the license." According to WMCD, "the failure of ODH to

provide the appeal rights, including providing any avenue or mechanism for effectuating those rights," is the issue challenged in this appeal. WMCD argues that the denial of the variance was central to the decision to revoke and not renew the license.

{¶ 35} WMCD asserts that ODH's adjudication order was not supported by reliable, probative, and substantial evidence, because WMCD satisfied the requirements of R.C. 3702.304 for a variance of the WTA licensing requirement. WMCD argues that its backup doctors and hospital transfer protocol clearly achieved the same end of patient health and safety that a WTA with a local hospital would afford. WMCD argues that the court had jurisdiction and authority under R.C. 119.12 to review the Director's decision to deny WMCD a variance; "[l]ike the right to a hearing, the Chapter 119 right to an appeal is triggered by an adjudication order by an agency." According to WMCD, the "fact that R.C. § 3702.304 states that the Director of [H]ealth's variance decision is 'final' does not preclude this Court from reviewing it under R.C. § 119.12. In fact, the variance decision could not be appealed under Chapter 119 unless it were final." According to WMCD, ODH's arbitrary requirement of four back-up physicians was not supported by any evidence, and the Director cited no testimony or evidence to support the assertion that WMCD's three backup doctors could not provide the same level of protection as a WTA with a local hospital. WMCD argues that not only was there evidence of Miami Valley Hospital's assurance that the hospital would treat WMCD's patients, but there was evidence that, of the few patients that had needed transfer to the hospital, Miami Valley Hospital had treated them every time. WMCD asserts that its "emergency protocol and system of backup doctors achieve[d] the purpose of a written transfer agreement," and that the arbitrary decision of the Director to revoke and not renew WMCD's license was

"plain by the Director continually raising the bar for WMCD to meet."

{¶ 36} Finally, WMCD argues that the adjudication order was contrary to law because R.C. 3702.303 is unconstitutional, since "it violates Ohio Constitution, Article II, Section 15(D)'s single subject rule requirement." WMCD again argues that "Ohio legislators buried five pages of controversial anti-abortion provisions in the several thousand pages of a budget bill that was sure to pass." According to WMCD, the "written transfer agreement provisions, which are inherently controversial and of significant constitutional import, were not debated and approved during a fair and open legislative process."

{¶ 37} In response, ODH notes that WMCD "admits that it does not have [a WTA], and it does not challenge the validity of the longstanding administrative rule requiring it to have one." According to ODH, "the issues WMCD seeks to raise are not just mistaken, but are not even validly before this Court." ODH asserts that the variance denial was not at issue here, as that decision was purely discretionary and not subject to judicial review.

{¶ 38} ODH asserts that "WMCD's alternative attack is equally irrelevant: It mistakenly asks this Court – in defiance of Ohio Supreme Court precedent directly on point – to hold that the 2013 statute codifying the WTA requirement is unconstitutional as a violation of the single-subject clause." Also, according to the ODH, the "attack on the statute is irrelevant because ODH's revocation order * * * relied on *both* the 2013 statute and the older 1996 administrative rule requiring a WTA."

{¶ 39} ODH notes that WMCD does not dispute the ultimate license-revocation issue other than by arguing that it should have received a variance. According to ODH, "WMCD argues no other path to reach its ultimate demand to reinstate its license, as

WMCD admits that it lacks the transfer agreement required by law." ODH notes that R.C. 3702.304 and Ohio Adm.Code 3701-83-14(F) set forth the procedure the Director must follow when considering a variance request; "[n]either provides, implies, or in any way contemplates a formal adjudicatory hearing." ODH observes that the "plain text of R.C. 3702.304 creates no hearing rights and no appeal rights." ODH argues that the "core WTA requirement was codified in a statute, but it confirmed and complemented the administrative rule, and did not supplant it. The Ohio Supreme Court confirmed that when it relied on the WTA rule to uphold a similar ODH order in *Capital Care."* According to ODH, to "read R.C. 3702.304 as requiring a hearing before denial of a variance or granting rights to appeal would require this tribunal to do precisely what is forbidden – 'to insert words not used' – into this otherwise unambiguous statute. Thus, neither hearing nor appeal is authorized here."

{¶ 40} ODH asserts that WMCD "offers no sound reason for reversal" of the variance decision. According to ODH, the statute grants the Director broad discretion, and "his insistence on more backup doctors and greater coverage [was] within the discretion that the General Assembly gave him." Regarding WMCD's granting of variances in the past, ODH argues that it "directly contradict[s]" the statute "to bind the Director to past practice."

{¶ 41} Finally, ODH argues that this Court "should not reach WMCD's constitutional attack on the statute, as the Order relied on the administrative rule as an independent basis, so *Capital Care* mandates that the court not reach further issues."

{¶ 42} In reply, WMCD asserts that the ODH "is wrong to distinguish the variance process from the license revocation"; "[t]hey are functionally the same and [WMCD's]

inability to challenge the denial of the variance renders the right to appeal the license revocation effectively meaningless." WMCD argues that the entire basis of the revocation of the license was the failure to obtain a variance, and that revocation is supposed to be reviewable and appealable. WMCD maintains that "[t]here is no due process in the appeal of the revocation if the entire basis for upholding the revocation is an unreviewable decision by the same person who revoked the license." WMCD asserts that it presented evidence that it "could achieve the purpose of the WTA," without actually having one, and was therefore entitled to a variance, and thus it was error for the Director to revoke and not renew WMCD's ASF license. According to WMCD, if ODH "wants the decision to revoke a license to be unreviewable, all it has to do [is] deny a variance. In that way, it has complete unreviewable control of the license revocation." WMCD argues that "[b]ecause the variance should not have been denied, the license should not have been revoked."

{¶ 43} As the Ohio Supreme Court noted in *Capital Care*:

The standard of review for an appeal to common pleas court from an administrative order revoking or denying renewal of a license is contained in R.C. 119.12(M), which specifies that the court may affirm the order if it is "supported by reliable, probative, and substantial evidence and is in accordance with law."

In *Univ. of Cincinnati v. Conrad*, 63 Ohio St.2d 108, 407 N.E.2d 1265 (1980), we indicated that "whether an agency order is supported by reliable, probative and substantial evidence essentially is a question of the absence or presence of the requisite quantum of evidence." *Id.* at 111, * * *. We

then explained that an administrative appeal to the common pleas court does not provide a trial de novo, * * *, but rather "the Court of Common Pleas must give due deference to the administrative resolution of evidentiary conflicts." * * * And where the agency's decision is supported by sufficient evidence and the law, the common pleas court lacks authority to review the agency's exercise of discretion, even if its decision is "admittedly harsh." *Henry's Café, Inc. v. Bd. of Liquor Control*, 170 Ohio St. 233, 236-237, 163 N.E.2d 678 (1959).

*Capital Care*, 153 Ohio St.3d 362, 2018-Ohio-440, 106 N.E.3d 120, at ¶ 24-25.

**{¶ 44}** "An appellate court's review is more limited than that of the trial court. In reviewing the trial court's determination on whether the order was supported by reliable, probative, and substantial evidence, the appellate court is limited to determining whether the trial court abused its discretion. * * *." *Robinson v. Ohio Dept. of Edn.,* 2012-Ohio-1982, 971 N.E.2d 977*,* ¶ 14 (2d Dist.)

**{¶ 45}** "Abuse of discretion" is a term defined as an attitude that is unreasonable, arbitrary or unconscionable. *AAAA Ents., Inc. v. River Place Community Urban Redevelopment Corp.*, 50 Ohio St.3d 157, 161, 553 N.E.2d 597 (1990). "It is to be expected that most instances of abuse of discretion will result in decisions that are simply unreasonable, rather than decisions that are unconscionable or arbitrary." *Id.* "A decision is unreasonable if there is no sound reasoning process that would support that decision." *Id.*

**{¶ 46}** Although the trial court characterized this as "an abortion regulation case," it is more aptly characterized as an ambulatory surgical facility/written transfer case

pursuant to ODH standards. We note that in *Capital Care,* the Ohio Supreme Court observed that *all* ambulatory surgical facilities in Ohio are required by statute to obtain a health care facility license from ODH, conditioned on compliance with quality standards established by ODH. *Capital Care,* 153 Ohio St.3d 362, 2018-Ohio-440, 106 N.E.3d 1209, at ¶ 8. R.C. 3702.30(A)(4) provides that an ASF is one of several types of health care facilities, and R.C. 3702.30(B) directs the director of health to "establish quality standards for health care facilities." R.C. 3702.30(D) provides that the "director shall issue a license to each health care facility that makes application for a license and demonstrates to the director that it meets the quality standards established by the rules adopted under division (B) of this section * * *." R.C. 3702.30(E)(1) provides that "no health care facility shall operate without a license issued under this section." R.C. 3702.30(F)(1) provides that the "rules adopted under division (B) of this section shall include * * * [p]rovisions governing application for, renewal, suspension, and revocation of a license under this section." The ODH denied WMCD an ASF license on two separate bases, namely Ohio Adm.Code 3701-83-19(E) and R.C. 3702.303(A), and the statute and the regulation apply to *all* ASFs.[5]

---

[5] Ohio Adm.Code 3701-83-15 defines an ASF as follows:

(A) "Ambulatory surgical facility" or "ASF" means a facility whether or not a part of the same organization as a hospital, which is located in a building distinct from another in which inpatient care is provided, and to which any of the following apply:
(1) Outpatient surgery is routinely performed in the facility and the facility functions separately from a hospital's inpatient surgical service or emergency department, and from the offices of private physicians, podiatrists, and dentists;
(2) Anesthesia is administered in the facility by an anesthesiologist or certified registered nurse anesthetist and the facility functions separately from a hospital's inpatient surgical service or emergency department, and from the offices of private physicians, podiatrists, and dentists;
(3) The facility applies to be certified by the centers for medicare and medicaid services

{¶ 47} Ohio Adm.Code 3701-83-19, upon which the ODH relied, provides: "* * * (E) Each ASF shall have a written transfer agreement with a hospital for transfer of patients in the event of medical complications."  In 2013, the General Assembly codified the rule in R.C. 3702.303(A).  *Capital Care* at ¶ 3.

{¶ 48} R.C. 3702.303 provides:

(A) Except as provided in division (C) of this section, an ambulatory surgical facility shall have a written transfer agreement with a local hospital that specifies an effective procedure for the safe and immediate transfer of patients from the facility to the hospital when medical care beyond the care that can be provided at the ambulatory surgical facility is necessary, including when emergency situations occur or medical complications arise. A copy of the agreement shall be filed with the director of health.

* * *

(C) The requirement for a written transfer agreement between an ambulatory surgical facility and a hospital does not apply if either of the

---

as an ambulatory surgical center for purposes of reimbursement under Part B of the medicare program, Part B of Title XVIII of the "Social Security Act" 49 Stat. 620 (1935), 42 U.S.C.A. 301, as amended;
(4) The facility applies to be certified by a national accrediting body approved by the centers for medicare and medicaid services for purposes of deemed compliance with the conditions for participating in the medicare program as an ambulatory surgical center;
(5) The facility bills or receives from any third-party payer, governmental health care program, or other person or government entity any ambulatory surgery facility fee that is billed or paid in addition to any fee for professional services; or
(6) The facility is held out to any person or government entity as an ambulatory surgical facility or similar facility by means of signage, advertising, or other promotional efforts.

We note that R.C. 3702.30 similarly defines an ASF.

following is the case:

* * *

(2) The director of health has, pursuant to the procedure specified in section 3702.304 of the Revised Code, granted the facility a variance from the requirement.

{¶ 49} As noted in *Capital Care,* R.C. 3702.303 further permits the ODH director to grant a variance from the written transfer agreement requirement pursuant to R.C. 3702.304(A) "if that requirement would cause undue hardship, the variance would not jeopardize the health and safety of any patient, and the facility has an agreement with a physician who had admitting privileges at a local hospital to provide back-up coverage." *Capital Care* at ¶ 12.

{¶ 50} Ohio Adm.Code 3701-83-14 provides that a heath care facility seeking a variance from a safety requirement must submit a written request to the director, including a statement of how the facility will meet the intent of the requirement in an alternative manner. Ohio Adm.Code 3701-83-14(B)(4). Upon receipt of the written request, the director may grant a variance if the director determines that the requirement has been met in an alternative manner. Ohio Adm.Code 3701-83-14(C)(1). "The refusal of the director to grant a variance * * * in whole or in part, *shall be final and shall not be construed as creating any rights to a hearing under Chapter 119. of the Revised Code.*" (Emphasis added.) Ohio Adm.Code 3701-83-14(F).

{¶ 51} WMCD asserted that it complied with R.C. 3702.304, which provides as follows:

(A)(1) The director of health may grant a variance from the written

transfer agreement requirement of section 3702.303 of the Revised Code if the ambulatory surgical facility submits to the director a complete variance application, prescribed by the director, and the director determines after reviewing the application that the facility is capable of achieving the purpose of a written transfer agreement in the absence of one. *The director's determination is final.*

\* \* \*

(C) *The director's decision to grant, refuse, or rescind a variance is final.*

(D) The director shall consider each application for a variance independently without regard to any decision the director may have made on a prior occasion to grant or deny a variance to that ambulatory surgical facility or any other facility.

(Emphasis added.)

{¶ 52} In *Capital Care*, the Supreme Court stated:

Ohio Adm.Code 3701-83-05.1(C)(2) permits ODH to "[r]evoke, suspend, or refuse to renew" a health care facility license if it determines that the facility "is not complying" with any provision of Ohio Adm.Code Chapter 3701-83, which includes the requirement that an ambulatory surgical facility have "a written transfer agreement with a hospital for transfer of patients in the event of medical complications, emergency situations, and for other needs as they arise, Ohio Adm.Code 3701-83-19(E).

*Capital Care*, 153 Ohio St.3d 362, 2018-Ohio-440, 106 N.E.3d 1209, at ¶ 26:

{¶ 53} The trial court accurately defined an "adjudication" as noted above. "[T]o constitute an 'adjudication' for purposes of R.C. 119.12, a determination must be (1) that of the highest or ultimate authority of an agency which (2) determines the rights, privileges, benefits, or other legal relationships of a person. Both elements are required." *Russell v. Harrison Twp.*, 75 Ohio App.3d 643, 648, 600 N.E.2d 374 (2d Dist.1991).

{¶ 54} We conclude that the trial court correctly distinguished the November 30, 2016 adjudication order revoking and refusing to renew WMCD's license from the discretionary, optional, elective and permissive decision denying WMCD's request for a variance via correspondence dated September 25, 2015, and that the court properly concluded that it lacked jurisdiction to address the variance issue. Not only was the variance issue not properly before the trial court, it was not part of the hearing officer's consideration in the April 26, 2016 hearing, and the adjudication order specifically provided that "WMC[D]'s statements regarding the rejection of its variance application [were] not the subject of this Adjudication Order."

{¶ 55} As the trial court noted, the nature of the denial of the variance is significant. WMCD acknowledges that an adjudication order triggers the right to an appeal pursuant to R.C. 119.12. R.C. 119.12 provides that any party adversely affected by an adjudication order denying the issuance or renewal of a license may appeal to the court of common pleas, and R.C. 119.06 provides that "[n]o adjudication order shall be valid unless an opportunity for a hearing is afforded in accordance with section 119.01 to 119.13 of the Revised Code. Such opportunity for a hearing shall be given before making the adjudication order * * *." The court's jurisdiction on WMCD's appeal arose

from the adjudication order, which was expressly addressed to the revocation and refusal to renew WMCD's ASF license and not the denial of the variance. The variance issue was governed by Ohio Adm.Code 3701-83-14 and R.C. 3702.304 and was not a judicially reviewable determination. Since WMCD did not have a WTA or a variance from the requirement to have one, ODH was entitled to "[r]evoke, suspend, or refuse to renew the license" pursuant to Ohio Adm.Code 3701-83-05.1(C)(2).

{¶ 56} Pursuant to *Capital Care*, we decline to address WMCD's constitutional challenge to R.C. 3702.303 pursuant to the single-subject rule "because ODH had the authority to revoke [WMCD's] license based on the failure to comply with the administrative rule requiring a written transfer agreement with a nearby hospital, [and] it is not necessary to reach those constitutional issues." *Capital Care* at ¶ 34. ODH's finding that WMCD did not complying with Ohio Adm.Code 3701-83-19(E) was supported by reliable, probative and substantial evidence and was in accordance with law. *See id.* at ¶ 30. An abuse of discretion also was not demonstrated. WMCD's assigned error is overruled.

{¶ 57} The judgment of the trial court is affirmed.

. . . . . . . . . . . . .

HALL, J. and TUCKER, J., concur.

Copies sent to:

Jennifer L. Branch
Alphonse A. Gerhardstein
David C. Greer
Stephen P. Carney

James T. Wakley
Hon. Mary L. Wiseman