O'Donnell, J.
*1211 *363 {¶ 1} This matter raises important issues that impact constitutional rights. The case has been thoroughly briefed, well argued, and presents single subject and due process challenges to provisions the legislature enacted as part of 2013 Am.Sub.H.B. No. 59 ("H.B. 59"), a biennial budget bill, which arguably impede rights guaranteed to women as declared by the United States Supreme Court in Roe v. Wade , 410 U.S. 113, 93 S.Ct. 705, 35 L.Ed.2d 147 (1973).
{¶ 2} But in the last analysis, this appeal involves a policy decision made by the legislative department of government in vesting the authority to license ambulatory surgical facilities in the Ohio Department of Health ("ODH") and in defining the scope of judicial review of its decisions. Adhering to the doctrine of separation of powers, we address the legal issue presented to our court, which concerns *364 whether the order of the director of the Department of Health for the state of Ohio revoking the license of Capital Care Network of Toledo for failure to comply with Ohio Adm.Code 3701-83-19(E) is supported by reliable, probative, and substantial evidence and is in accordance with law.
{¶ 3} Since 1996, ODH regulations have required ambulatory surgical facilities in Ohio to have a written transfer agreement with a hospital to facilitate treatment in the event of an emergency or an urgent complication beyond the capability of the facility. ODH interprets Ohio Adm.Code 3701-83-19(E) to require ambulatory surgical facilities to have a written transfer agreement with a nearby hospital-specifically, a hospital within 30 minutes' transport from the facility. In 2013, the General Assembly codified the rule in R.C. 3702.303(A), expressly requiring written transfer agreements to be negotiated with local hospitals.
{¶ 4} Capital Care operated with a negotiated written transfer agreement with the University of Toledo Medical Center, but in April 2013, the university advised Capital Care that it would not renew its contract, *1212 which expired on July 31, 2013. Capital Care continued operating without an agreement until January 20, 2014, when it negotiated a new transfer agreement with the University of Michigan Health System to transfer patients to its hospital in Ann Arbor, Michigan, 52 miles from Capital Care's Toledo facility. ODH held an administrative hearing and as a result revoked and refused to renew Capital Care's health care facility license based on its violation of both R.C. 3702.303(A) and Ohio Adm.Code 3701-83-19(E).
{¶ 5} On Capital Care's administrative appeal, the Lucas County Common Pleas Court reversed the license revocation, finding R.C. 3702.303(A) unconstitutional and the revocation contrary to law. The Sixth District Court of Appeals affirmed, holding that R.C. 3702.303(A) and related statutes violate the Single Subject Clause of Article II, Section 15(D) of the Ohio Constitution, unlawfully delegate licensing authority to private parties, and impose an undue burden on obtaining an abortion.
{¶ 6} Neither court, however, examined the authority of ODH to revoke Capital Care's license for operating without a valid written transfer agreement in violation of Ohio Adm.Code 3701-83-19(E). In this case, the order of the Ohio Department of Health revoking the health care facility license of Capital Care is supported by reliable, probative, and substantial evidence and is in accordance with law because Capital Care operated without a written transfer agreement for a period of five months and its subsequent agreement with the University of Michigan does not satisfy the Ohio Administrative Code requirement to establish and maintain written transfer agreements for patients in emergency situations.
*365 {¶ 7} Accordingly, we reverse the judgment of the court of appeals and reinstate the decision of the Ohio Department of Health.
Facts and Procedural History
{¶ 8} Capital Care is an ambulatory surgical facility located in Toledo, Ohio, that provides abortion services. All ambulatory surgical facilities in Ohio are required by statute to obtain a health care facility license from ODH, conditioned on compliance with quality standards established by ODH. R.C. 3702.30(A)(4)(a), (B), (D), and (E)(1).
{¶ 9} Ohio Adm.Code 3701-83-19(E) establishes that each ambulatory surgical facility "shall have a written transfer agreement with a hospital for transfer of patients in the event of medical complications, emergency situations, and for other needs as they arise." The regulations further authorize ODH to grant "a variance or waiver from any building or safety requirement established by Chapter 3701-83 of the Administrative Code, unless the requirement is mandated by statute." Ohio Adm.Code 3701-83-14(A).
{¶ 10} In 2010, Terrie Hubbard purchased Capital Care, which had been licensed as an ambulatory surgical facility by ODH. In August 2012, she obtained a written transfer agreement with the University of Toledo Medical Center. However, in April 2013, the university informed Hubbard and ODH that it would not renew the written transfer agreement with Capital Care, and it expired on July 31, 2013.
{¶ 11} On July 30, 2013, ODH inquired whether Capital Care had negotiated a new written transfer agreement, but Capital Care did not respond. ODH inspected the facility on August 1, 2013, and discovered that Capital Care had neither a written transfer agreement nor a written plan for complying with Ohio Adm.Code 3701-83-19(E). The next day, ODH Director Theodore E. Wymyslo, M.D., issued notice *1213 of his intent to revoke and refuse to renew Capital Care's health care facility license. ODH granted Capital Care a hearing but continued it on the ODH director's motion.
{¶ 12} Thereafter, effective September 29, 2013, the General Assembly codified the written transfer agreement rule when it enacted R.C. 3702.303 as part of the biennial budget bill, H.B. 59, requiring ambulatory surgical facilities to have
a written transfer agreement with a local hospital that specifies an effective procedure for the safe and immediate transfer of patients from the facility to the hospital when medical care beyond the care that can be provided at the ambulatory surgical facility is necessary, including when emergency situations occur or medical complications arise.
*366 The statute further permits the ODH director to grant a variance from the written transfer agreement requirement pursuant to R.C. 3702.304(A) if that requirement would cause undue hardship, the variance would not jeopardize the health and safety of any patient, and the facility has an agreement with a physician who has admitting privileges at a local hospital to provide back-up coverage. H.B. 59 also enacted R.C. 3727.60(B), which prohibits public hospitals from entering into written transfer agreements with facilities performing nontherapeutic abortions or from authorizing a doctor to use the doctor's staff privileges to support a variance application.
{¶ 13} Capital Care never sought a waiver or variance of the written transfer agreement requirement pursuant to either the rule or the statute. Rather, on January 20, 2014, it entered into a written transfer agreement with the Regents of the University of Michigan on behalf of the University of Michigan Health System in Ann Arbor, Michigan, 52 miles from Capital Care.
{¶ 14} On February 18, 2014, Dr. Wymyslo again issued notice of his intent to revoke and refuse to renew Capital Care's health care facility license, explaining that "[t]he written transfer agreement violates the R.C. 3702.303(A) requirement that the written transfer agreement be with a local hospital."
{¶ 15} ODH conducted a hearing encompassing both the August 2, 2013 and February 18, 2014 notices. Dr. Wymyslo explained that the written transfer agreement requirement exists to protect the health of patients in the event of an emergency or urgent complication beyond the capability of the ambulatory surgical facility to handle by ensuring that the facility has made advance arrangements to transfer the patient and the patient's records to a hospital. He noted that transfer to a hospital through its emergency room decreases the quality of care because it "wastes valuable hours of time" if the emergency room staff has "to reconstruct what happened [and] learn past information" and admission to the hospital is not prearranged. Dr. Wymyslo pointed out that the written transfer agreement makes admission and treatment "faster and more efficient and [provides] better quality care."
{¶ 16} Based on his experience credentialing physicians providing emergency- and urgent-care backup at Miami Valley Hospital, Dr. Wymyslo testified that his expectation was that a written transfer agreement needs to be with a hospital within 30 minutes' transport from the facility in order to effectively provide for treatment in the event of emergencies and urgent complications. He explained that "anything more than a 30-minute time period becomes a patient safety and quality *1214 of care concern" and that "every hospital in Ohio" has used 30 minutes when they credential physicians as "a reasonable period of time in which an individual should have access to emergency intervention." Dr. Wymyslo described this 30-minute period as what is "reasonable, customary and in the best interest *367 of the patient," in responding to emergencies and urgent complications. He also clarified that ODH had relied on the same 30-minute standard in reviewing written transfer agreements both before and after R.C. 3702.303(A) required them to be with local hospitals. And based on the 52-mile distance from Capital Care to the University of Michigan Health System, he decided that "clearly this was going to be a greater than 30-minute period of time between the time of an emergency arising and the time that they could access care in this facility."
{¶ 17} Hubbard, Capital Care's owner, testified that she had been unable to obtain a written transfer agreement with any Toledo hospital, and she indicated that in the event of an emergency, the clinic's staff would call 9-1-1 and the fire department would transport the patient to Toledo Hospital, the closest hospital, regardless of whether the facility had a written transfer agreement with a different hospital. Further, she explained, patients with complications that were not emergencies would be transported to Ann Arbor by helicopter or ambulance. Although she claimed that flight time to Ann Arbor from the facility was 15 to 20 minutes, she admitted that it would take approximately 50 to 60 minutes for a helicopter to reach the facility from its base in Licking County. She also admitted that she had no contract with the air-ambulance provider to ensure that a helicopter would be available when needed.
{¶ 18} The hearing examiner found that Capital Care had operated for more than five months without a written transfer agreement in violation of Ohio Adm.Code 3701-83-19(E) and that the written transfer agreement it subsequently obtained was not with a local hospital, in violation of R.C. 3702.303(A), and he concluded that "the Director's August 02, 2013 and February 18, 2014 decisions to not renew, or to revoke the license of Capital Care, are valid." ODH's interim director, Lance D. Himes, approved the hearing examiner's report and recommendation and issued an adjudication order on July 29, 2014, revoking and refusing to renew Capital Care's health care facility license "in accordance with R.C. 3702.32, 3702.303(A), R.C. Chapter 119, and OAC 3701-83-19(E)."
Capital Care Appeals the License Revocation
{¶ 19} Capital Care appealed the adjudication order to the Lucas County Common Pleas Court pursuant to R.C. Chapter 119, and that court reversed, concluding that although ODH had reasonably determined that Capital Care lacked a written transfer agreement with a "local" hospital, enacting R.C. 3702.303, 3702.304, and 3727.60(B) in the biennial budget bill violated the Single Subject Clause of Article II, Section 15(D) of the Ohio Constitution, and these statutes amounted to an unconstitutional delegation of licensing authority to private entities, imposing an undue burden on women seeking an abortion.
{¶ 20} The Sixth District Court of Appeals affirmed the trial court, holding that in accord with *368 Whole Woman's Health v. Hellerstedt , 579 U.S. ----, 136 S.Ct. 2292, 195 L.Ed.2d 665 (2016), the statutory mandate for a written transfer agreement and the statutory prohibition against public hospitals entering into written transfer agreements with abortion clinics imposed an undue burden on obtaining an abortion, because the "virtually nonexistent health benefits" of requiring a *1215 transfer agreement did not outweigh the "substantial obstacles in the path of a woman seeking an abortion." 2016-Ohio-5168, 58 N.E.3d 1207, ¶ 33. It further concluded that R.C. 3702.304 delegated licensing authority to private parties because it permitted a variance from the written transfer agreement requirement only if the facility obtained an agreement with a physician who had admitting privileges at a local, private hospital. And lastly, it concluded that R.C. 3702.303, 3702.304, and 3727.60 violate the Single Subject Clause because there is no common nexus with the budget-related items in H.B. 59.
Arguments before the Ohio Supreme Court
{¶ 21} On appeal to this court, ODH urges that the court need not address the constitutional issues presented in this case, because the transfer agreement with the University of Michigan Health Center in Ann Arbor does not comply with Ohio Adm.Code 3701-83-19(E), and therefore, the order revoking Capital Care's license is supported by reliable, probative, and substantial evidence and is in accordance with the law. It also contends: (1) the provisions related to ambulatory surgical facilities enacted in H.B. 59 do not violate the Single Subject Clause, (2) Capital Care disclaimed the argument that the written transfer agreement statute imposes an undue burden on abortion rights, and in any case, the statute is rationally related to protecting the health of women having abortions, and (3) the statute does not unconstitutionally delegate licensing authority to third parties, because ODH has the final decision with respect to granting a variance.
{¶ 22} Capital Care argues that ODH did not rely on Ohio Adm.Code 3701-83-19(E) but rather concluded that the written transfer agreement did not comply with R.C. 3702.303(A). It asserts that the statute and the rule impose different standards but only the statute required the agreement to be with a local hospital, and it maintains that its written transfer agreement complies with the rule by providing for emergency transfers to a local hospital using 9-1-1 and non-emergency transfers to Ann Arbor via helicopter or ground transport. Capital Care further contends that had it known that its agreement needed to but did not comply with the rule, it would have sought a waiver or a variance and that principles of procedural due process preclude ODH from now using the rule to revoke the license when it never provided notice that the Michigan transfer agreement did not comply with that rule. It also contends that (1) enacting regulations on ambulatory surgical facilities disconnected from appropriations in the biennial budget bill violates the Single Subject Clause, (2) the court of appeals correctly concluded that R.C. 3702.303, 3702.304, and 3727.60 impose an undue *369 burden on abortion rights after the Supreme Court's intervening decision in Hellerstedt rendered ODH's revocation of its license contrary to law, and (3) those statutes unconstitutionally delegate the state's licensing authority to private parties by giving privately owned hospitals and physicians the arbitrary power to veto the licensing and operation of abortion providers by refusing to contract with them.
{¶ 23} The legal question presented here is whether the order of ODH revoking Capital Care's health care facility license is supported by reliable, probative, and substantial evidence and is in accordance with law.
Law and Analysis
{¶ 24} The standard of review for an appeal to common pleas court from an administrative order revoking or denying renewal of a license is contained in *1216 R.C. 119.12(M), which specifies that the court may affirm the order if it is "supported by reliable, probative, and substantial evidence and is in accordance with law."
{¶ 25} In Univ. of Cincinnati v. Conrad , 63 Ohio St.2d 108, 407 N.E.2d 1265 (1980), we indicated that "whether an agency order is supported by reliable, probative and substantial evidence essentially is a question of the absence or presence of the requisite quantum of evidence." Id. at 111, 407 N.E.2d 1265. We then explained that an administrative appeal to the common pleas court does not provide a trial de novo, id. at 110, 407 N.E.2d 1265, but rather "the Court of Common Pleas must give due deference to the administrative resolution of evidentiary conflicts," id. at 111, 407 N.E.2d 1265. And where the agency's decision is supported by sufficient evidence and the law, the common pleas court lacks authority to review the agency's exercise of discretion, even if its decision is "admittedly harsh." Henry's Cafe, Inc. v. Bd. of Liquor Control , 170 Ohio St. 233, 236-237, 163 N.E.2d 678 (1959).
{¶ 26} Ohio Adm.Code 3701-83-05.1(C)(2) permits ODH to "[r]evoke, suspend, or refuse to renew" a health care facility license if it determines that the facility "is not complying" with any provision of Ohio Adm.Code Chapter 3701-83, which includes the requirement that an ambulatory surgical facility have "a written transfer agreement with a hospital for transfer of patients in the event of medical complications, emergency situations, and for other needs as they arise," Ohio Adm.Code 3701-83-19(E).
{¶ 27} Both before and after the enactment of R.C. 3702.303(A), the director of ODH interpreted Ohio Adm.Code 3701-83-19(E) to require ambulatory surgical facilities to have a written transfer agreement with a hospital within a 30-minute transport from the facility. Dr. Wymyslo testified that 30 minutes is the reasonable and customary time for transporting a patient to the hospital in the event of *370 an emergency or urgent complication and that anything more than 30 minutes threatens patient safety and quality of care.
{¶ 28} The evidence adduced at the administrative hearing supports the director's finding that the agreement with the Ann Arbor hospital did not comport with the administrative rule's requirement of a written transfer agreement "for transfer of patients in the event of medical complications, emergency situations, and for other needs as they arise ." (Emphasis added.) Ohio Adm.Code 3701-83-19(E). Because the rule provides for the transfer of patients in emergency situations , it anticipates that the patient will be quickly transported to a nearby hospital for emergency treatment rather than taken to one further away over a longer period of time. The testimony established that the Ann Arbor agreement would not have allowed for the effective transfer and treatment of a patient in an emergency situation. Hubbard admitted that Capital Care lacked a written transfer agreement with any hospital between August 1, 2013, and January 20, 2014. She also testified that the University of Michigan Health System in Ann Arbor is 52 miles from her facility in Toledo, and although she suggested that a helicopter could be used to transfer patients there, she admitted that she had no contract with an air-ambulance provider to ensure that one would be available when needed. Even if one were available, she admitted it could take an hour for it to reach her facility before flying another 15 to 20 minutes to Ann Arbor. In short, the evidence plainly established that the Ann Arbor agreement would not allow for the transfer of patients "in the event of medical complications, emergency situations, and for other needs as they arise." ODH's *1217 determination that Capital Care did not comply with Ohio Adm.Code 3701-83-19(E) was supported by reliable, probative, and substantial evidence.
{¶ 29} Capital Care's argument that deciding this case by applying the administrative rule violates due process is without merit. Importantly, Capital Care has maintained throughout these proceedings that its agreement with the University of Michigan Health System complies with the rule, and it did not seek a variance or a waiver of the rule's written transfer agreement requirement even during the extended period in which it operated without any written transfer agreement. Thus, its claim that it has now been denied due process by being deprived of the opportunity to seek a variance or a waiver is not well taken, because it never believed it needed one in the first instance, did not pursue a variance or waiver, and thus has not been denied that opportunity. In addition, it has never questioned the applicability or constitutionality of Ohio Adm.Code 3701-83-19(E), and in Women's Med. Professional Corp. v. Baird , 438 F.3d 595 (6th Cir.2006), the Sixth Circuit Court of Appeals held that applying the rule's written transfer agreement requirement to a Dayton abortion clinic did not impose an undue burden on abortion rights, id. at 609, or constitute an unconstitutional delegation of licensing authority to a third party, id. at 610.
*371 {¶ 30} Accordingly, ODH's finding that Capital Care is not complying with Ohio Adm.Code 3701-83-19(E) is supported by reliable, probative, and substantial evidence and is in accordance with law. Capital Care operated without a written transfer agreement for five months and currently has no such agreement with a hospital that allows for the transfer of patients in the event of emergency situations. These violations permitted ODH to revoke Capital Care's health care facility license pursuant to rule.
{¶ 31} And contrary to the approach of the court of appeals in reaching the constitutionality of R.C. 3702.303, 3702.304, and 3727.60, our precedent directs that "this court will not reach constitutional issues unless absolutely necessary." State v. Talty , 103 Ohio St.3d 177, 2004-Ohio-4888, 814 N.E.2d 1201, ¶ 9 ; In re Miller , 63 Ohio St.3d 99, 110, 585 N.E.2d 396 (1992). And our long-standing practice disfavors issuing advisory opinions. Dohme v. Eurand Am., Inc. , 130 Ohio St.3d 168, 2011-Ohio-4609, 956 N.E.2d 825, ¶ 27 ; Egan v. Natl. Distillers & Chem. Corp. , 25 Ohio St.3d 176, 495 N.E.2d 904 (1986), syllabus. As Chief Justice Roberts has stated, "[I]f it is not necessary to decide more, it is necessary not to decide more." PDK Laboratories, Inc. v. United States Drug Enforcement Admin. , 362 F.3d 786, 799 (D.C.Cir.2004) (Roberts, J., concurring in part and concurring in judgment). We thus decline to address the constitutional issues in this case, because revocation of Capital Care's license is supported by reliable, probative, and substantial evidence and is in accordance with law.
Conclusion
{¶ 32} For more than two decades, Ohio Adm.Code 3701-83-19(E) has required ambulatory surgical facilities in Ohio to have written transfer agreements with hospitals in order to facilitate treatment in the event of medical complications, emergency situations, and for other needs as they arise.
{¶ 33} The record here demonstrates that Capital Care violated Ohio Adm.Code 3701-83-19(E) by operating without any written transfer agreement between August 1, 2013, and January 20, 2014, and without a written transfer agreement that allows for the transfer of patients in the event of emergency situations after January *1218 20, 2014. Thus, this appeal is a license revocation case based on the failure to comply with an administrative rule, and the order of ODH revoking and refusing to renew Capital Care's health care facility license pursuant to Ohio Adm.Code 3701-83-05.1(C)(2) and 3701-83-19(E) is supported by reliable, probative, and substantial evidence and is in accordance with law.
{¶ 34} Instead of reviewing the basis of the revocation, the appellate court jumped to the constitutional questions, concluding that R.C. 3702.303, 3702.304, and 3727.60 violate the Single Subject Clause and delegate licensing authority to third parties-and without the benefit of briefing or argument, it also held that these statutes impose an undue burden on abortion rights. However, because *372 ODH had authority to revoke Capital Care's license based on the failure to comply with the administrative rule requiring a written transfer agreement with a nearby hospital, it is not necessary to reach those constitutional issues.
{¶ 35} Accordingly, we reverse the judgment of the court of appeals and reinstate the order of the Ohio Department of Health revoking and refusing to renew the license of Capital Care Network of Toledo.
Judgment reversed.
Kennedy, Fischer, and DeWine, JJ., concur.
French, J., concurs, with an opinion joined by Kennedy and DeWine, JJ.
O'Connor, C.J., dissents, with an opinion joined by O'Neill, J.