[Cite as *Ohio Div. of Securities v. Treece*, 2022-Ohio-3267.]

IN THE COURT OF APPEALS OF OHIO
SIXTH APPELLATE DISTRICT
LUCAS COUNTY

Ohio Division of Securities

      Appellee

v.

Dock Douglas Treece, et al.

      Appellant

Court of Appeals No.  L-21-1191

Trial Court No.  CI0202003770

**DECISION AND JUDGMENT**

Decided:  September 16, 2022

* * * * *

Dave Yost, Ohio Attorney General, and Chad M. Kohler,
Senior Assistant Attorney General, for appellee.

Neil S. McElroy, for appellant.

* * * * *

**PIETRYKOWSKI, J.**

{¶ 1} Appellant, Dock Douglas Treece ("Treece"), appeals from a judgment entered by the Lucas County Court of Common Pleas, affirming an order that was issued by appellee, the Ohio Department of Commerce, Division of Securities ("the Division").[1] For the reasons that follow, we affirm the judgment of the trial court.

---

[1] The notice of appeal that was filed in this matter identifies Treece, Treece Investment Advisory Corporation ("Treece Advisory") and Treece Financial Services Corporation

**Factual and Procedural Background**

{¶ 2} Appellant and his two companies, Treece Financial and Treece Advisory operate as for-profit entities. Treece Financial is a securities dealer licensed with the Division and with the Financial Industry Regulatory Authority (FINRA). Appellant has maintained his license as a securities salesperson through his affiliation with Treece Financial. Treece Advisory is licensed as an investment adviser with the Division, and it is separate and distinct from Treece Financial. Appellant is licensed as an Ohio investment adviser representative with Treece Advisory. Appellant is the President of both Treece Financial and Treece Advisory.

{¶ 3} According to the Division, a routine examination of appellant and the two investment businesses that he controlled and operated led to a subsequent, in-depth investigation, which resulted in the Division issuing a notice of hearing to Treece and to his businesses notifying them of the Division's intent to suspend or revoke their respective securities licenses.

{¶ 4} The Division conducted an administrative hearing, after which the hearing officer issued a report and recommendation recommending that the securities licenses for

("Treece Financial") as "Defendants-Appellants." But the appellate brief that Treece's counsel filed with this court identifies only Treece as an appellant. Treece's brief makes no arguments on behalf of the two companies, and no additional briefs were filed by, or on behalf of, those companies. Thus, only Treece's arguments are before this court. The appeals pertaining to Treece Advisory and to Treece Financial are therefore dismissed, pursuant to 6thDist.Loc.App.R. 5(B). *See* 6thDist.Loc.App.R. 5(B) ("If the appellant/cross-appellant fails to timely file the assignments of error and brief, the court may dismiss the appeal/cross-appeal without prior notice.").

2.

Treece and his investment businesses be revoked. Treece and his businesses filed written objections to the report and recommendation. The Division, after considering those objections, issued a final order concluding that Treece and his companies had violated their suitability obligations and fiduciary duties to their customers. And on the basis of those conclusions, the Division revoked the securities licenses belonging to Treece and to his businesses.

{¶ 5} Appellants filed an appeal from the order in the Lucas County Common Pleas Court. The trial court affirmed, finding that the Division's order was supported by reliable, probative, and substantial evidence and was made in accordance with the law.

{¶ 6} Treece and his businesses subsequently filed timely notice of appeal in this court.

**Assignments of Error**

{¶ 7} Appellant asserts the following assignments of error on appeal:

I.  The trial court erred in failing to address some of the due process claims raised by the appellant on appeal.

II.  The trial court erred in affirming the Commissioner's finding that the appellant breached his suitability obligations.

III.  The trial court erred in affirming the Commissioner's finding that the appellant breached his fiduciary duties to his clients.

3.

IV.    The trial court erred in affirming the Commissioner's finding that appellant lacked a good business repute.

**Analysis**

{¶ 8} "In an administrative appeal under R.C. 119.12, the common pleas court reviews the entire record and determines whether the agency's order is supported by reliable, probative, and substantial evidence and is in accordance with law." *Mocznianski v. Ohio Dept. of Job & Family Servs.*, 6th Dist. Lucas No. L-19-1076, 2020-Ohio-1161, ¶ 21, citing *Capital Care Network of Toledo v. Ohio Dept. of Health*, 153 Ohio St.3d 362, 2018-Ohio-440, 106 N.E.3d 1209, ¶ 24. "'Reliable' evidence is dependable or trustworthy; 'probative' evidence tends to prove the issue in question and is relevant to the issue presented; and 'substantial' evidence carries some weight or value." *Id.*, citing *Ohio Civ. Rights Comm. v. Case W. Reserve Univ.*, 76 Ohio St.3d 168, 178, 666 N.E.2d 1376 (1996). Where the agency's decision is "supported by sufficient evidence and the law, the common pleas court lacks authority to review the agency's exercise of discretion * * *." *Mocznianski* at ¶ 21, citing *Capital Care Network* at ¶ 25.

{¶ 9} In contrast to the common pleas court, this court's review of a subsequent appeal under R.C. 119.12 "is much narrower." *Mocznianski* at ¶ 22. The appeals court reviews the common pleas court's decision only for an abuse of discretion. *Id.,* citing *Rossford Exempted Village School Dist. Bd. of Edn. v. State Bd. of Edn.*, 63 Ohio St.3d 705, 707, 590 N.E.2d 1240 (1992). "Unlike the court of common pleas, a court of

4.

appeals does not determine the weight of the evidence." *Byrd v. Auditor of State*, 10th Dist. Franklin No. 10AP-560, 2011-Ohio-3306, ¶ 12. "Where, however, questions of law are raised on appeal from an administrative agency, both the common pleas court and the court of appeals exercise plenary powers of review." *Mocznianski* at ¶ 23 (internal citation and quotation omitted). Thus, "[a]bsent an abuse of discretion on the part of the trial court, a court of appeals may not substitute its judgment for [that of an administrative agency] or a trial court. Instead, the appellate court must affirm the trial court's judgment." *Fehrman v. Ohio Dept. of Commerce, Div. of Securities*, 141 Ohio App.3d 503, 507, 751 N.E.2d 1089 (10th Dist.2001) (brackets in original), quoting *Pons v. Ohio State Med. Bd.*, 66 Ohio St.3d 619, 621, 614 N.E.2d 748 (1993).

{¶ 10} "A trial court abuses its discretion where its decision is unreasonable, arbitrary, or unconscionable." *Mocznianski* at ¶ 22, citing *Blakemore v. Blakemore*, 5 Ohio St.3d 217, 219, 450 N.E.2d 1140 (1983). "An unreasonable decision is one that lacks sound reasoning to support the decision." *Moczinianski* at ¶ 22 (citation omitted). "'An arbitrary decision is one that lacks adequate determining principle and is not governed by any fixed rules or standard.'" *Id.*, quoting *Porter, Wright, Morris & Arthur, LLP v. Frutta del Mondo, Ltd.*, 10th Dist. Franklin No. 08AP-69, 2008-Ohio-3567. ¶ 11. "And an unconscionable decision is one that affronts the sense of justice, decency, or reasonableness." *Moczinianski* at ¶ 22 (internal quotations and citations omitted).

{¶ 11} Appellant claims in his first assignment of error that the trial court erred in failing to address certain due process claims that were raised by the appellant as part of

5.

that appeal. According to appellant, "violations" that the trial court failed to address include: 1) "the right to a fair hearing;" 2) "the preclusion of certain documents and testimony;" 3) "failure to consider certain evidence admitted at the hearing;" and 4) "a failure to allow for acquisition of documents needed to defend the allegations." Without any additional argument explaining how the trial court may have abused its discretion when overruling his due process objections, and without citing any legal authority whatsoever, appellant asks this court to remand the matter to the lower court "so that the court may fully and completely address the issues raised as part of this appeal."

{¶ 12} App.R. 12 (A)(2) states that an appellate court "may disregard an assignment of error presented for review if the party raising it fails to identify in the record the error on which the assignment of error is based or fails to argue the assignment separately in the brief, as required under App.R. 16(A)." At most, appellant refers this court generally to pages 50-59 of the brief that he submitted to the trial court. However, "[i]t is well-established that 'the Rules of Appellate Procedure do not permit parties to "incorporate by reference" arguments from other sources.'" *Ebbing v. Lawhorn,* 12th Dist. Butler No. CA2011-07-125, 2012-Ohio-3200, ¶ 3. Moreover, "[i]t is not the duty of an appellate court to search the record for evidence to support an appellant's argument as to an alleged error." *Id.*, citing *Cireddu v. Cireddu*, 8th Dist. Cuyahoga No. 76784, 2000 WL 1281253, *9 (Sept. 7, 2000).

{¶ 13} Similarly, App.R. 16(A)(7) requires an appellant's brief to include "[a]n argument containing the contentions of the appellant with respect to each assignment of

6.

error presented for review and the reasons in support of the contentions, with citations to the authorities, statutes, and parts of the record on which appellant relies." As indicated above, appellant does not cite any legal authority in support of his first assignment of error – not a single case, statute, or rule. "According to App.R. 12(A)(2) [an appellate court] may disregard an assignment of error if an appellant fails to cite to any legal authority in support of an argument a required by App.R. 16(A)(7)," *Huffer v. Brown*, 10th Dist. Franklin No. 12AP-1086, 2013-Ohio-4384, ¶ 12 (citations omitted).

{¶ 14} On these grounds, alone, appellant's first assignment of error is properly dismissed.

{¶ 15} Even if we were to consider appellant's first assignment of error, we find that his request for remand is misplaced. This court recognizes that "[generally], if [a] trial court fails to rule on a motion or objection, an appellate court will presume that the objection or motion was overruled." *Syslo v. Syslo*, 6th Dist. Lucas Nos. L-06-1016, L-06-1122, 2006-Ohio-6053, ¶ 30. The inquiry then turns to whether the trial court abused its discretion in overruling the objection. *See, e.g., id.* at ¶ 30-35 (presuming for purposes of review that an objection to the introduction of certain evidence was overruled, and then holding that the trial court did not abuse its discretion in denying the objection). Accordingly, remand is not an appropriate remedy here.

{¶ 16} Assuming, arguendo, that appellant's due process claims are properly before this court, we find no abuse of discretion on the part of the trial court in overruling the due process objections that appellant raised below.

7.

{¶ 17} We begin with appellant's suggestion that the trial court abused its discretion in affirming the hearing officer's exclusion of certain exhibits that appellant attempted to introduce at the hearing. Under R.C. 119.09, state agencies "shall pass on the admissibility of evidence" presented at hearing. The Ohio Supreme Court has held that administrative agencies "must have at least some minimal authority to control those hearings, subject to a duty to maintain fairness and impartiality." *Clayton v. Ohio Bd. of Nursing*, 147 Ohio St.3d 114, 2016-Ohio-643, 62 N.E.3d 132, ¶ 34. "Generally speaking, a hearing officer has broad discretion in conducting administrative hearings." *Holzhauser v. State Med. Bd.*, 10th Dist. Franklin No. 06AP-1031, 2007-Ohio-5003, ¶ 17. The hearing officer has the discretion to determine the admissibility of evidence, and a court's review is limited to whether the administrative tribunal abused its discretion. *In re Waste Technologies Industries*, 132 Ohio App.3d 145, 152, 724 N.E.2d 819 (10th Dist.1998). Notably, "[s]trict and technical rules of criminal or civil judicial hearings do not apply to [administrative hearings]." *Clayton* at ¶ 34.

{¶ 18} Specifically, appellant argued to the trial court that the hearing officer improperly excluded Exhibits H, I, X, and OO from evidence.

{¶ 19} Exhibit H is a blank "form" document, titled "Account Update Form," which bears on its face the Treece Advisory logo. Appellant attempted to introduce Exhibit H by showing it to Attorney Analiese Hinchcliffe during cross-examination. When Hinchcliffe testified that she had never seen the document before, the Division objected to appellant asking Hinchcliffe questions about it. The hearing officer sustained

8.

the objection. Appellant never referred to this document again during his case-in-chief to explain what it was or how it was relevant to the case.

{¶ 20} The trial court did not err in dismissing appellant's arguments about a document that was never properly authenticated and, thus, was properly excluded from evidence.

{¶ 21} Exhibit I is another blank investor form that was never introduced the hearing. At the end of the hearing, the parties discussed the admission of exhibits. In objecting to the admission of Exhibits H and I, the Division pointed out that "they were both brought up for [Attorney Hinchcliffe], because these were things that were objected to and they were never reintroduced, so there was no testimony at all regarding either of these." As with Exhibit H, the record shows that appellant never referred to Exhibit I during his case-in-chief in order to explain what it was or how it was relevant to the case.

{¶ 22} Again, the trial court did not err in dismissing appellant's arguments about a document that was never properly authenticated and, thus, was properly excluded from evidence.

{¶ 23} Appellant represented that Exhibit X reveals a history of trades that appellant executed for his clients from 1979 to 2018. Appellant questioned Hinchcliffe about this exhibit, and she explained that she had not seen the exact form, but had seen a version of the first page of that form. The Division objected to the admission of Exhibit X on the grounds that most of the transactions that were recorded in the document were outside the "relevant" time period of January 1, 2013 through February 12, 2018, which

9.

was the time period reflected in the notice that the Division provided to appellant when it initially notified him of the charges against him. The trial court's silence concerning the exclusion of this document suggests its agreement that Exhibit X was not relevant to the time period at issue in the case.

{¶ 24} Exhibit OO is a settlement letter sent to the Division from the counsel who represented appellant prior to the beginning of the administrative hearing. Under Evid. R. 408, the letter would be inadmissible as an offer of compromise. To the extent that appellant wanted to use the exhibit "to identify mistakes in the NOI," appellant acknowledged at the hearing both his ability and intention to introduce the desired evidence by alternative means.

{¶ 25} Upon our review of the record, we conclude that the trial court did not abuse its discretion in affirming the hearing officer's exclusion of the various exhibits that appellant attempted to introduce at the hearing.

{¶ 26} Appellant also argued to the trial court that the hearing officer violated appellant's due process rights by "ignoring" certain evidence that was admitted at the hearing. The general rule in an administrative appeal is that the trial court should not substitute its judgment for that of the agency. "[A] common pleas court reviewing the factual findings of an administrative agency pursuant to R.C. 119.12 should defer to the administrative resolution of evidentiary conflicts." *Dublin Corp. v. Ohio Dept. of Commerce, Div. of Secs.,* 10th Dist. Franklin No. 90AP-600, 1991 WL 38768, *3 (Mar. 19, 1991), citing *Univ. of Cincinnati v. Conrad*, 63 Ohio St.2d 1087, 111. "[A]n

10.

agency's findings of fact are presumed to be correct and must be deferred to by a reviewing court unless that court determines that the agency's findings are internally inconsistent, impeached by evidence of a prior inconsistent statement, rest upon improper inferences, or are otherwise unsupportable." *Ohio Historical Soc. v. State Emp. Relations Bd.*, 66 Ohio St.3d 466, 471, 613 N.E.2d 591 (1993).

{¶ 27} In the instant case, we find nothing in the record to suggest that the trial court abused its discretion in rejecting appellant's arguments regarding the hearing officer's evidentiary decisions.

{¶ 28} Finally, appellant argued to the trial court that the hearing officer violated his due process rights by unlawfully prohibiting him from gathering evidence needed to defend the allegations against him. Specifically, appellant complained that the hearing officer attempted to block appellant from receiving records by way of a public records request and through the use of subpoenas.

{¶ 29} This court recognizes that "the civil rules pertaining to discovery do not apply to proceedings conducted pursuant to R.C. Chapter 119." *Leake v. Ohio State Bd. of Psychology*, 6th Dist. Sandusky No. 5-92-32, 1993 WL 235826 (Jun. 30, 1993). Even without discovery available to him, prior to the administrative hearing appellant obtained copies of the Division's investigatory files relating to him by means of a public records request made pursuant to R.C. 149.43. While the Division ultimately produced certain documents in response to the request, the parties were unable to come to an agreement as to certain other documents that appellant sought. As a result, appellant filed a complaint

11.

with the Ohio Court of Claims seeking to compel the production of the remaining documents.

{¶ 30} With the court of claims case remaining outstanding, appellant filed a request for a postponement of the administrative hearing. The hearing officer denied the request. Ohio law does not require a hearing to be postponed on the basis that a respondent has not received a response to a public records request from an agency, and appellant could point to no statute requiring the release of the Division's investigatory file prior to the start of an R.C. Chapter 119 hearing.

{¶ 31} Whatever error appellant may try to assign to the postponement denial was arguably rendered moot when on April 2, 2019 – thirteen days prior to the commencement of the administrative hearing – the court of claims special master issued his report and recommendation finding that appellant's remaining requests were ambiguous and overly broad, and that R.C. 1707.12(B) prevented the release of the Division's investigatory file. The court of claims adopted the special master's report and recommendation in its entirety on April 25, 2019.

{¶ 32} Under the circumstances of this case, appellant cannot convincingly claim that his due process rights were violated when the hearing officer denied appellant's postponement request for public records that were not required to be produced.

{¶ 33} Equally dubious is appellant's argument that the hearing officer denied him due process by quashing a subpoena that appellant served seeking the Division's investigatory files. The Ohio Supreme Court, in *Clayton v. Ohio Bd. of Nursing*, 147

12.

Ohio St.3d 114, 2016-Ohio-643, 62 N.E.3d 132, affirmed an agency's ability to limit or quash subpoenas requested in an R.C. Chapter 119 hearing, stating:

> Without the ability to quash or limit subpoenas that seek the production of unreasonable, privileged, or irrelevant information or witness testimony, a hearing examiner would be powerless to control the procedure of the adjudication hearing pursuant to R.C. 119.09. Thus, the authority to quash or limit subpoenas flows from the authority to issue them in an adjudicative hearing.
>
> Accordingly, we hold that a hearing examiner has the discretion to limit or quash subpoenas requested during adjudication hearings for the purpose of conducting a fair and efficient hearing.

*Id.* at ¶ 35-36.

{¶ 34} In *Clayton,* the court affirmed that a hearing officer's decision to limit or quash a subpoena should be reviewed under an abuse of discretion standard. *Id.* at ¶ 37 (the question is whether the hearing examiner's decision to limit or quash a subpoena "was so arbitrary that it constituted an abuse of discretion or denied [the licensee] her due-process right to the opportunity to be heard in a meaningful manner").

{¶ 35} Appellant's subpoena requested: (1) Division examination files relating to appellant from 2008 to 2017; (2) Division email messages and correspondence that referenced or mentioned appellant from 2013 to 2018; and (3) all complaints of any kind about appellant from 2013 to 2018.

13.

{¶ 36} The Division moved to quash the subpoena on the grounds that the request sought attorney-client privileged communications and that R.C. 1707.12 exempted the Division's investigatory files from disclosure.

{¶ 37} R.C. 1707.12(B) provides in relevant part:

Information obtained by the division * * * *through any investigation* shall be retained by the division and *shall not be available to inspection* by persons other than those having a direct economic interest in the information or the transaction under investigation, or by law enforcement agencies, state agencies, federal agencies, and other entities as set forth by rules adopted by the division.

*Id.* (Emphasis added.)  As stated by the Ohio Supreme Court in *Dublin Securities,* 68 Ohio St.3d 426, 627 N.E.2d 993, "it was hardly the legislative intent of R.C. 1707.12 to place investigatory files in the hands of a subject under investigation."  *Id.* at ¶ 16.  Thus, R.C. 1707.12(B) completely exempts the Division's investigatory file from disclosure, regardless of whether it contains trial preparation material or law enforcement records. *See Clayton*, 147 Ohio St.3d 114, 2016-Ohio-643, 62 N.E.3d 132, at ¶ 19 (finding that because R.C. 1707.12(B) exempted the entire investigatory file from disclosure, alternative arguments regarding trial preparation material and law enforcement records did not need to be addressed).

{¶ 38} In the instant case, the hearing officer properly exercised his discretion by following the plain language of R.C. 1707.12(B) and Ohio Supreme Court precedent in

quashing appellant's subpoena, and the trial court did not abuse its discretion when it affirmed the Division's action.

{¶ 39} For all of the foregoing reasons, appellant's first assignment of error is found not well-taken.

{¶ 40} Appellant argues in his second assignment of error that the trial court erred in affirming the Divisions' determination that appellant breached his suitability obligations. Under Ohio law, securities salespersons are required to make a reasonable inquiry into clients' "investment objectives, financial situation and needs, and any other relevant information known to the dealer or salesperson" prior to recommending or executing any securities sales or purchases. Ohio Adm.Code 1301:6-3-19(A)(5).

{¶ 41} Similarly, under FINRA Rule 2111(a), promulgated by the Financial Industry Regulatory Authority:

> [A FINRA-regulated broker] must have a reasonable basis to believe that a recommended transaction or investment strategy involving a security or securities is suitable for the customer, based on the information obtained through the reasonable diligence of the [broker] to ascertain the customer's investment profile.

*Id.* Appellant, as an employee of a FINRA-member firm, was required under R.C. 1707.142(A) to comply with all FINRA rules, including FINRA Rule 2111(a).

{¶ 42} In its review, the trial court properly observed that "[t]here is little evidence of record that is disputed as far as Treece's intake or onboarding of clients, including that

15.

the prospective investor form used by Treece and Treece Financial did not include data concerning liquidity needs, assets, other investments, and investment experience." Indeed, the evidence before the trial court showed that appellant maintained very little written documentation about his clients' investment profiles. Aside from some very limited and basic information regarding client's liquid assets maintained on two single-page investor forms, appellant testified that while he might ask clients about liquid assets, he does not normally memorialize that information. Appellant also admitted that he did not make efforts to personally remember most other client information.

{¶ 43} The trial court also observed that "[t]here was nothing in the record with regard to management of clients' ongoing situations, or their needs as investors * * * after they became appellant's clients." It is undisputed that after clients invested with appellant, they rarely heard from him or met with him again, except through his monthly newsletter, which contained his views and opinions of the economy as a whole. Appellant never offered personalized investment advice on an annual basis to his clients. He did not hold annual meetings with clients and he did not have annual personal contact with them. Neither did he set clients up on a schedule to call them on a specific timeframe, such as on a six-month or a yearly schedule. Instead, he would invite his clients annually, through his newsletter, simply to update their mailing address, their contact information, and their employment information.

{¶ 44} As to his clients' individual holdings, the record before the trial court showed that appellant used a "one-size-fits-all" approach, regardless of each client's

16.

unique investment profile. Nearly every single client was invested in the same two mutual funds, and in identical proportions. The trial court reasonably observed that, "[g]iven Treece's aforementioned lack of memorialization as evidenced by the Division's investigation, along with omitted investment profile factors, it is unlikely and illogical that the exact same investment strategy is suitable for all of [Treece's] clients."

{¶ 45} Several of appellant's clients testified at the administrative hearing. Their testimony showed that appellant's clients had vastly different investment goals and varying levels of investment sophistication and experience. For example, one client, who was a school teacher, had very different liquidity needs from another client, who owned a Mercedes dealership and had various accounts with other financial advisors. According to the trial court, the client testimony "demonstrates the diverse needs of the clients (all of which were kept in the same investment portfolio) as well as [the] clients' lack of understanding of Treece's business model and the overall investment strategy."

{¶ 46} Based on the record that was before it, we find that the trial court did not abuse its discretion when affirming the Division's order. Accordingly, appellant's second assignment of error is found not well-taken.

{¶ 47} Appellant argues in his third assignment of error that the trial court erred in affirming the Division's determination that appellant breached his fiduciary duties to his clients. The relationship between a financial advisor and his or her clients is clearly fiduciary in nature. *S.E.C. v. Capital Gains Research Bur., Inc.*, 375 U.S. 180, 194, 84 S.Ct. 275, 11 L.Ed.2d 237 (1963); *see also*, *Mathias v. Rosser*, 10th Dist. Franklin No.

17.

01AP-768, 2002-Oiho-2772, ¶ 28, citing *Byrley v. Nationwide Life Ins. Co.*, 94 Ohio App.3d 1, 18, 640 N.E.2d 187 (6th Dist.1994). A fiduciary relationship is "a relationship in which one party to the relationship places a special confidence and trust in the integrity and fidelity of the other party to the relationship, and there is a resulting position of superiority or influence, acquired by virtue of the special trust." *Mathias* at ¶ 28. "Courts have imposed on a fiduciary an affirmative duty of 'utmost good faith, and full and fair disclosure of all material facts,' as well as an affirmative obligation 'to employ reasonable care to avoid misleading his clients.'" *Capital Gains Research Bur.* at 194. In Ohio, it is unlawful for an investment adviser and investment adviser representative to "engage, or attempt to engage, in any act or practice constituting a breach of fiduciary duty." Ohio Adm.Code 1301:6-3-44(E)(1)(f). It is undisputed that appellant, as an investment adviser, acted as a fiduciary and therefore owed these heightened duties to his clients as a matter of law.

{¶ 48} The evidence in the record established that appellant breached his fiduciary duties to his clients in several ways, including: (1) charging investment advisory fees for services that were not rendered (also known as "reverse churning"); and (2) failing to properly and adequately disclose certain inherent conflicts of interest to his clients.

{¶ 49} "Reverse churning" is "based on the theory that – by charging expensive, asset-based fees for investments with low trading activity and no need for ongoing monitoring or advice – the fiduciaries [are] able to limit the time they spent on customer service and investment advice and focus on recruiting additional customers." *Pizzaro v.*

18.

*The Home Depot, Inc.,* N.D.Ga. No. 1:18-CV-01566-WMR, 2019 WL 11288656, at *1 (Sep. 20, 2019).

**{¶ 50}** In written disclosures that appellant provided to his clients, appellant stated that his firm's advisory services were "designed, among other things, to assist the client in determining which mutual fund or funds are most appropriate to each client's financial condition and objectives." For these services, appellant billed his clients as much as 2% annually for managing their investments. Between January 1, 2013 and September 30, 2017, appellant billed his clients at least $2,539,504.44 in investment advisory fees.

**{¶ 51}** Despite this significant compensation, the evidence before the trial court established that appellant did not manage his clients' investments in any meaningful way. As discussed above, appellant put his clients in the same two mutual funds, in the same percentages, and rarely made changes to these allocations. And he seldom, if ever, communicated with his clients individually, on a personalized basis.

**{¶ 52}** The trial court concluded in its summation of the evidence before it that "based on the number of clients and the utter lack of activity within these accounts as evidenced by the Divisions' investigation, it would seem that [Treece ] collected high fees for little service over the course of six years." The trial court's conclusion was reasonable and in no way constituted an abuse of discretion.

**{¶ 53}** Next, we address the additional determination by the trial court that appellant failed to disclose certain inherent conflicts of interest to his clients. As indicated previously, appellant recommended that all of his clients invest in the same two

19.

mutual funds and, further, all of the mutual fund purchases were made through Treece Financial, the broker-dealer that appellant operated. The evidence in the record additionally showed that appellant's clients were charged both upfront sales charges of 5.75% on the mutual fund purchases and ongoing 12b-1 fees of 0.25%.

{¶ 54} At the hearing, Attorney Hinchcliffe testified that appellant's clients could have avoided paying all of these charges and fees if the investments had been purchased outside of Treece Financial. Hinchcliffe also testified that appellant did not adequately disclose this inherent conflict of interest to his clients.

{¶ 55} Notably, none of the five clients who testified at the hearing understood that Treece Advisory and Treece Financial were separate companies.

{¶ 56} The trial court concluded that "[t]he Division established an intentional funneling of investments through Treece Financial without benefit or justification to clients," and "[t]here is reliable, probative and substantive evidence that the disclosure does not adequately notify clients" of the "clear conflict of interest[s]" at issue. We find that the trial court did not abuse its discretion in reaching this conclusion.

{¶ 57} Appellant's third assignment of error is found not well-taken.

{¶ 58} Finally, appellant argues in his fourth assignment of error that the trial court erred in its determination that appellant lacked good business repute. Under R.C. 1707.19(A)(1), the Division may suspend or revoke the license of a dealer, salesperson, investment adviser, or investment adviser representative if it finds that the licensee is "not of good business repute." *Fehrman v. Ohio Dept. of Commerce*, 141 Ohio App.3d 503,

20.

507, 751 N.E.2d 1089 (10th Dist.2001). Although the definition of "good business repute" is not provided in the statute, R.C. 1707.20(A) authorizes the Division to adopt rules defining terms, as long as the definitions are not inconsistent with R.C. 1707.01 to 1707.50. *See id.* (citing a former version of R.C. 1707.20(A)). In determining "good business repute," Ohio Adm. Code 1301:6-3-19(D)(8) states that the Division shall consider whether the licensee "has violated *any* provision of Chapter 1707. of the Revised Code or any rule promulgated thereunder." (Emphasis added.)

{¶ 59} Thus, the Division has the authority to find that a licensee lacks good business repute if the Division also finds that the licensee has violated provisions of R.C. 1707. Here, the division found that appellant breached his suitability obligations in violation of R.C. 1707.142(A) and Ohio Adm.Code 1301:6-3-19(A)(5), and that appellant breached his fiduciary duties, in violation of Ohio Adm.Code 1301:6-3-44(E)(1)(f). Standing alone, each of these two breaches is a violation of R.C. Chapter 1707 and, therefore, each subjects the licensee to a finding that the licensee is not of good business repute.

{¶ 60} As the trial court noted, because it upheld the Division's findings as to both suitability obligations and fiduciary duties, it was compelled to affirm the finding of a lack of good business repute, inasmuch as a violation of R.C. Chapter 1707 constitutes *prima facie* proof of a lack of good business repute, and because the Division's sanction – to wit, the revocation of appellant's licenses and the issuance of a cease and desist order - - is authorized under R.C. 1707.19 and R.C. 1707.23. Accordingly, the trial court did not

21.

abuse its discretion in affirming the Division's finding of a lack of good business repute. Appellant's fourth assignment of error is therefore found not well-taken.

{¶ 61} For all of the foregoing reasons, the trial court did not abuse its discretion when it found that the Division's order was supported by reliable, probative, and substantial evidence, and was made in accordance with the law. The judgment of the Lucas County Court of Common Pleas is affirmed. Appellant is ordered to pay the costs of this appeal pursuant to App.R. 24.

Judgment affirmed.

A certified copy of this entry shall constitute the mandate pursuant to App.R. 27. *See also* 6th Dist.Loc.App.R. 4.

Mark L. Pietrykowski, J.

Gene A. Zmuda, J.

Myron C. Duhart, P.J.
CONCUR.

_____
JUDGE

_____
JUDGE

_____
JUDGE

This decision is subject to further editing by the Supreme Court of Ohio's Reporter of Decisions. Parties interested in viewing the final reported version are advised to visit the Ohio Supreme Court's web site at: http://www.supremecourt.ohio.gov/ROD/docs/.